# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2026

Lyle W. Cayce
Clerk

No. 26-30071
Summary Calendar

Lethornia J. Whiticar, Jr.,

*Plaintiff—Appellant*,

*versus*

Parish Hospital Service District for the Parish of
Orleans, District A, *doing business as* New Orleans East
Hospital; Louisiana Children's Medical Center, *doing
business as* LCMC Health,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-1287

Before Davis, Stewart, and Duncan, *Circuit Judges*.
Per Curiam:[*]

Plaintiff-Appellant Lethornia J. Whiticar, Jr. appeals the dismissal of his employment-retaliation claim on summary judgment. Because he did not carry his burden of proof as to causation or pretext, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 26-30071

Whiticar, who is African-American, began working for Defendant-Appellee Louisiana Children's Medical Center d/b/a LCMC Health in 2018, when he was hired as an Engineer II at New Orleans East Hospital.[1] In October 2022, he was rapidly promoted to Engineer I then to Chief Engineer. At all times, his direct supervisor was Karl Warner (Facilities Director), who is white. Warner, in turn, was supervised by Danielle Willis (Chief Financial and Administrative Officer), who is African-American.

Whiticar claims that shortly after he became Chief Engineer, Warner began to undermine him and made it impossible for him to do his job. Whiticar asserts he complained about Warner's discrimination to Brion Stanford, the hospital's Director of Human Resources, sometime in November 2022. Then on January 13, 2023, Warner conducted an introductory review of Whiticar's performance as Chief Engineer and gave Whiticar his first negative review at LCMC. Finally, on February 12, 2023, Whiticar was demoted from Chief Engineer back to Engineer I.

Whiticar sued LCMC under 42 U.S.C. § 1981, alleging Warner discriminated against him and the subsequent demotion was in retaliation for Whiticar's complaint to Stanford. The district court dismissed the discrimination claim as time-barred, leaving Whiticar with a standalone retaliation claim.

To prove a circumstantial case of retaliation such as Whiticar's, an employee must show (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the

---

[1] Defendant-Appellee Parish Hospital Service District for the Parish of New Orleans, District A owns the land on which New Orleans East Hospital is located and the building itself. The District argued on summary judgment that it did not employ Whiticar but, given the ruling on summary judgment, the district court did not decide the issue.

protected activity and adverse action.[2] Upon proof of this prima facie case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for the adverse action at issue. The employee must then respond with proof that his "protected conduct was *the* reason for the adverse action."[3] To carry this burden, the employee may combine "suspicious timing with other significant evidence of pretext."[4]

LCMC sought summary judgment on the retaliation claim for two reasons—causation and pretext—and presented sworn statements by Stanford and Willis in support. Stanford's statement provides that Whiticar never complained to Stanford at all, so Stanford had no reason to tell anyone at LCMC that Whiticar had engaged in protected activity.[5] Willis's statement says she made the decision to demote Whiticar due to performance concerns and, at the time, was unaware that Whiticar had complained to Stanford or engaged in other protected activity.

Willis's statement also describes the issues she observed in Whiticar's performance, which arose very shortly after he assumed the role of Chief Engineer. For one, Whiticar did not know how to prepare the hospital for a potential freeze when Willis asked him to ready the hospital for cold weather, though his predecessor did. He also had trouble using the hospital's automation system, which regulated temperatures in critical areas like the

---

[2] *See Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022).

[3] *Id.*

[4] *Id.* (internal quotation marks omitted); *see also Feist v. La., Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) ("In order to avoid summary judgment, the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity." (internal quotation marks omitted)).

[5] We credit Whiticar's statement that he complained to Stanford. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (viewing evidence in the light most favorable to the nonmovant and construing all reasonable inferences in his favor).

surgical theater. And Warner's January 2023 evaluation of Whiticar's performance confirmed Willis's observations. Specifically, the review concludes Whiticar was not meeting three of five job functions: while he satisfactorily managed schedules and forecast operational expenses and capital outlays, he was not meeting expectations as to preventative maintenance, managerial skills, and project management. Willis thus decided to demote Whiticar to Engineer I, effective February 12, 2023—a move endorsed by the hospital's CEO (also an African-American woman).

Whiticar responded with his own sworn statement and that of a coworker. Whiticar's statement attests that Warner criticized him, denied him access to the hospital's environmental systems, and altogether prevented him from performing the Chief Engineer job. The coworker's statement broadly supports Whiticar's testimony and further observes that Whiticar was excluded from departmental projects and administrative meetings. Crucially though, neither statement challenges LCMC's evidence that Willis made the decision to demote Whiticar and was unaware of Whiticar's supposed protected activity. Because of this, the district court granted LCMC's motion on causation. It also found Whiticar had not shown that LCMC's reason for demoting him was pretextual. Our review is de novo.[6]

We agree with the district court that Whiticar failed to carry his burden of proof on the causation element of the prima facie case. It's elemental that "[i]f the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the

---

[6] *See Harness v. Watson*, 47 F.4th 296, 303 (5th Cir. 2022) (per curiam).

plaintiff for having engaged in that activity."[7] Accordingly, an employee "must produce *at least some* evidence," whether direct or circumstantial, "that the decisionmakers had knowledge of his protected activity."[8] This burden can be overcome with a mix of "prototypical circumstantial indicators of decisionmaker knowledge"—things like "temporal proximity, specific conversations with knowledgeable colleagues, changed decisionmaker behavior following complaints, pretext, and parallel" adverse actions taken against other employees who also engaged in protected activity.[9] An employee, however, must present more "than mere curious timing coupled with speculative theories."[10]

Whiticar does not offer "prototypical circumstantial indicators of decisionmaker knowledge," such as changes in Willis's behavior or comments indicating Willis knew of Whiticar's supposed complaint. He instead relies on three other indicia of causation—his prior excellent performance reviews, LCMC's policy permitting performance-improvement plans, and the timing between his protected activity and demotion. But neither past evaluations of Whiticar's work in other positions nor LCMC's policy permitting performance-improvement plans is probative of Willis's knowledge.[11]

---

[7] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883–84 n.6 (5th Cir. 2003).

[8] *Id.* (emphasis added); *EEOC v. Emcare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) ("A decisionmaker's awareness may be established by circumstantial evidence.").

[9] *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 361 (5th Cir. 2017) (per curiam).

[10] *Emcare*, 857 F.3d at 683 (internal quotation marks omitted).

[11] Whiticar's reply brief raises for the first time a cat's-paw theory—that Warner's retaliatory motive influenced Willis's decision to demote Whiticar. *See Emcare*, 857 F.3d at 684 n.3. We will not decide a new theory raised in a reply brief. *See Owens*, 33 F.4th at 824

No. 26-30071

That leaves just Whiticar's temporal evidence—his complaint in November 2022 and demotion in February 2023. Without more, this three-month gap raises at most a weak causal inference.[12] And that weak inference does not carry Whiticar's causal burden given LCMC's unrebutted statements disclaiming Willis's knowledge. The district court correctly dismissed on this ground.[13]

Assuming Whiticar could barely clear the causation bar, his claim fails on pretext. Willis states she demoted Whiticar because she personally observed his poor performance as Chief Engineer, which Warner's evaluation confirmed. Although Whiticar argues the negative review was animated by Warner's discriminatory intent, there is no discrimination claim before the court, and he otherwise presents no evidence disputing Willis's performance-based reason for the demotion. Hence, there is no basis to find pretext in this record.

AFFIRMED.

---

n.4. Even if we did, the new argument is futile because there is no record evidence that *Warner* was aware of Whiticar's protected activity, either.

[12] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (suggesting three-month gap is too long to raise an inference of causation on temporal proximity alone).

[13] Whiticar also argues his retaliation claim involves other adverse employment actions beyond his demotion. But his counseled brief does not identify those adverse actions or contend they were presented to the district court, so there is nothing more for us to consider. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal.").